1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER JAMES RAY, SR.,      )      NO. EDCV 13-1258 AGR

12            Plaintiff,              )

13         v.                         )

14   CAROLYN W. COLVIN,               )      MEMORANDUM OPINION AND
                                      )      ORDER
     Commissioner of Social Security,
15                                    )

16            Defendant.              )

17   _____  )

18         Plaintiff Christopher James Ray, Sr. filed this action on July 24, 2013.

19   Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the

20   magistrate judge on August 1 and 6, 2013.  (Dkt. Nos. 9, 10.)  On February 27,

21   2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed

22   issues.  The court has taken the matter under submission without oral argument.

23         Having reviewed the entire file, the court affirms the decision of the

24   Commissioner.

25
26
27
28

1

## I.

## PROCEDURAL BACKGROUND

On May 8, 2010, Ray filed applications for disability insurance benefits and supplemental security income, alleging an onset date of July 31, 2006. Administrative Record ("AR") 10, 127-37.  The applications were denied initially and on reconsideration.  AR 10, 66-68, 72, 82-87.  Ray requested a hearing before an Administrative Law Judge ("ALJ").  AR 89.  On November 7, 2011, the ALJ conducted a hearing at which Ray and a vocational expert testified.  AR 27-65.  On December 14, 2011, the ALJ issued a decision denying benefits.  AR 10-22.  On June 10, 2013, the Appeals Council denied the request for review.  AR 1-3.  This action followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

2

1

## III.

2

## DISCUSSION

3

### A.    Disability

4        A person qualifies as disabled, and thereby eligible for such benefits, "only

5   if his physical or mental impairment or impairments are of such severity that he is

6   not only unable to do his previous work but cannot, considering his age,

7   education, and work experience, engage in any other kind of substantial gainful

8   work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20,

9   21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

10      ### B.    The ALJ's Findings

11       The ALJ found that Ray meets the insured status requirements through

12  June 30, 2012.  AR 12.  Following the five-step sequential analysis applicable to

13  disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir.

14  2006),[1] the ALJ found that Ray did not engage in substantial gainful activity after

15  December 2007.[2]  AR 13.  Ray has the severe impairments of advanced

16  osteoarthritis of the right hip, degenerative disc disease, degenerative meniscal

17  tears of the right knee, and obesity.  *Id.*  Ray has the residual functional capacity

18  ("RFC") to perform medium work, except he can lift and/or carry 50 pounds

19  occasionally and 25 pounds frequently; can stand, walk or sit for six hours out of

20  an eight-hour workday with regular breaks; is unlimited with respect to pushing

21  and/or pulling, other than as indicated for lifting and/or carrying; can occasionally

22  climb ramps or stairs; can occasionally balance, stoop, kneel, crouch and crawl;

23  can occasionally use right foot pedals; is precluded from using ladders, ropes and

24

25      [1]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the
26  claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work.  *Lounsburry*, 468 F.3d at 1114.
27

28      [2]  The ALJ found that Ray engaged in substantial gainful activity from October 2006 through December 2007.  AR 12.

3

1  scaffolds; is precluded from hazardous machinery and unprotected heights; can

2  occasionally ambulate over uneven terrain; and is precluded from concentrated

3  exposure to vibration.  AR 14.  Ray is capable of performing past relevant work

4  as a maintenance repairer.  AR 20.  In addition, there are other jobs existing in

5  significant numbers in the national economy that he can perform.  AR 20-21.

6  **C.      Medical Equivalency to Listed Impairment 1.02A**

7  Ray contends the ALJ did not provide a proper explanation for determining

8  that he did not equal Listing 1.02A, and did not consider the combined effects of

9  his impairments in determining whether he equals Listing 1.02A.

10  The claimant bears the burden of demonstrating that his impairments are

11  equivalent to one of the listed impairments that are so severe as to preclude

12  substantial gainful activity.  *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S.

13  Ct. 2287, 96 L. Ed. 2d 119 (1987).  "If the impairment meets or equals one of the

14  listed impairments, the claimant is conclusively presumed to be disabled.  If the

15  impairment is not one that is conclusively presumed to be disabling, the

16  evaluation proceeds to the fourth step ."  *Id.* at 141; *see also Tackett v. Apfel*, 180

17  F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii),

18  416.920(a)(4)(iii).

19  "The listings define impairments that would prevent an adult, regardless of

20  his age, education, or work experience, from performing *any* gainful activity, not

21  just 'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.

22  Ct. 885, 107 L. Ed. 2d 967 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in

23  original).  "For a claimant to show that his impairment matches a listing, it must

24  meet *all* of the specified medical criteria.  An impairment that manifests only some

25  of those criteria, no matter how severely, does not qualify."  *Id.* at 530 (citation

26  omitted) (emphasis in original).  "To *equal* a listed impairment, a claimant must

27  establish symptoms, signs and laboratory findings 'at least equal in severity and

28  duration' to the characteristics of a relevant listed impairment, or, if a claimant's

4

1   impairment is *not* listed, then to the listed impairment 'most like' the claimant's

2   impairment." *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526)

3   (emphasis in original).  "'Medical equivalence must be based on medical findings.'

4   A generalized assertion of functional problems is not enough to establish

5   disability at step three." *Id.* at 1100 (quoting 20 C.F.R. § 404.1526).  "An ALJ

6   must evaluate the relevant evidence before concluding that a claimant's

7   impairments do not meet or equal a listed impairment.  A boilerplate finding is

8   insufficient to support a conclusion that a claimant's impairment does not do so."

9   *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

10  Listing 1.02 provides as follows:

11  Major dysfunction of a joint(s) (due to any cause):

12  Characterized by gross anatomical deformity (e.g.,

13  subluxation, contracture, bony or fibrous ankylosis,

14  instability) and chronic joint pain and stiffness with signs of

15  limitation of motion or other abnormal motion of the affected

16  joint(s), and findings on appropriate medically acceptable

17  imaging of joint space narrowing, bony destruction, or

18  ankylosis of the affected joint(s). With:

19  A. Involvement of one major peripheral weight-bearing joint

20  (i.e ., hip, knee, or ankle), resulting in inability to ambulate

21  effectively, as defined in 1.00B2b;

22  . . .

23  B2b.  What we mean by inability to ambulate effectively.

24  Definition.  Inability to ambulate effectively means an

25  extreme limitation of the ability to walk; i.e., an impairment(s)

26  that interferes very seriously with the individual's ability to

27  independently initiate, sustain, or complete activities.

28  Ineffective ambulation is defined generally as having

1    insufficient lower extremity functioning (see 1.00J) to permit

2    independent ambulation without the use of a hand-held

3    assistive device(s) that limits the functioning of both upper

4    extremities.  (Listing 1.05C is an exception to this general

5    definition because the individual has the use of only one

6    upper extremity due to amputation of a hand.)

7    To ambulate effectively, individuals must be capable of

8    sustaining a reasonable walking pace over a sufficient

9    distance to be able to carry out activities of daily living.  They

10   must have the ability to travel without companion assistance

11   to and from a place of employment or school.  Therefore,

12   examples of ineffective ambulation include, but are not

13   limited to, the inability to walk without the use of a walker,

14   two crutches or two canes, the inability to walk a block at a

15   reasonable pace on rough or uneven surfaces, the inability

16   to use standard public transportation, the inability to carry out

17   routine ambulatory activities, such as shopping and banking,

18   and the inability to climb a few steps at a reasonable pace

19   with the use of a single hand rail.  The ability to walk

20   independently about one's home without the use of assistive

21   devices does not, in and of itself, constitute effective

22   ambulation.

23   20 C.F.R. pt. 404, subpt. P., app. 1, § 1.02.

24   Ray argues that while he does not meet Listing 1.02A, he equals it.

25   Specifically, he argues that "while the evidence of record may not clearly

26   establish that [he] does indeed meet 1.02A . . . because he is not precluded from

27   walking on uneven ground/terrain, [he] certainly equals the criteria of 1.02A . . .

28   because [he] is very restricted in his ability to walk on uneven ground/terrain as

1  he can only perform this activity occasionally and he has multiple severe

2  impairments." JS 7.

3      To the extent Ray argues that he equals Listing 1.02A because the ALJ

4  determined that he could only occasionally ambulate over uneven terrain, he is

5  incorrect. *See e.g., Moreno v. Astrue*, 444 F. App'x 163, 164 (9th Cir. 2011)

6  (concluding that ALJ's RFC determination that limited claimant to walking on even

7  terrain did not establish inability to ambulate effectively under the listings);

8  *Hernandez v. Colvin,* 2013 WL 1401368, *4 (C.D. Cal. April 4, 2013) (concluding

9  that ALJ's RFC determination that plaintiff cannot walk on uneven terrain "by itself

10  does not establish an inability to ambulate effectively for purposes of the

11  listings").

12      The ALJ extensively discussed the evidence, and the basis of his listings

13  determination was clear. AR 14-19. As the ALJ noted, no treating or examining

14  physician recorded findings equivalent in severity to the criteria of any listed

15  impairment, and the evidence does not show medical findings that are the same

16  or equivalent to any listed impairment. AR 14. The ALJ found that the treatment

17  records showed that Ray received routine, conservative, and non-emergency

18  treatment. AR 17. He found that Ray engaged in a somewhat normal level of

19  daily activity, including showering, shopping, cooking, vacuuming, doing laundry,

20  and eating out with his family. AR 16, 37-40. The ALJ noted that although Ray

21  appeared at the hearing with a cane, he testified that his physician did not

22  prescribe the cane. AR 16, 34. Ray testified that he does not use the cane at

23  home or in the yard, but only uses it when he knows he is going to be on his feet

24  "for a while." AR 34. The ALJ noted that Dr. Simmonds, a consultative examiner,

25  indicated in October 2010 that Ray did not use assistive devices for ambulation

26  and was able to get onto and off the examination table and assume the supine

27  position without assistance or difficulty. AR 16, 239. Dr. Simmonds opined that

28  Ray did not require an assistive device for ambulation, and he could occasionally

1    walk on uneven terrain.  AR 18, 240.  Dr. Simmons also opined that Ray could

2    perform a range of medium exertional work.  AR 18, 240.  The ALJ noted that

3    Ray played baseball in November 2009.  AR 16, 222.  The ALJ noted that Ray

4    leaned on a walker while standing when he saw Dr. Kim, a workers'

5    compensation medical examiner, in August 2006, shortly after his July 31, 2006

6    injury.  AR 17, 190.  The ALJ noted that Ray returned to his regular work as a

7    truck driver on October 9, 2006.  AR 17, 206-07.  The MRI of Ray's right knee in

8    2006 showed a very subtle meniscal tear.  AR 18, 214.  The MRI of Ray's lumbar

9    spine in 2006 showed a lesion in the conus medullaris, possible ependymoma,

10   and multiple degenerative changes.  AR 18, 214.  Dr. Kim recommended

11   considering arthroscopic surgery, but opined that Ray could perform his regular

12   work.  AR 18, 215.  The MRI of Ray's lumbar spine in 2008 showed Ray had

13   several disc protrusions, disc dessications, moderate to severe hypertrophic facet

14   changes, and lateral recess stenosis.  AR 18, 275.

15        The ALJ discussed the opinion of Dr. Choi, who provided an orthopedic

16   consultation on January 28, 2011 and saw Ray for three follow-up appointments.

17   AR 19-20, 278-82.  Dr. Choi diagnosed Ray with advanced osteoarthritis of the

18   right hip and obesity, and opined in June 2011 that Ray was not able to return to

19   work.  AR 18, 280.  However, the ALJ gave "little weight" to Dr. Choi's opinion

20   because it was brief, conclusory, and inadequately supported by clinical findings,

21   and was inconsistent with Ray's admitted activities of daily living.  AR 19.

22        The record shows that the ALJ actually considered equivalence.  He did

23   not merely state that Ray did not equal a listing, as Ray contends.  JS 9 (citing

24   *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990), where the Ninth Circuit

25   reversed and remanded at step three "for proper consideration of step three

26   equivalence").

27        Ray also argues that the combination of his impairments established

28   medical equivalence.  The ALJ considered whether Ray's obesity by itself or in

8

1  combination with other impairments met or equaled a listing.  AR 14.  He found

2  that no treating or examining physician had recorded findings equivalent in

3  severity to the criteria of any listed impairment, and the evidence does not show

4  medical findings that are the same or equivalent to any listing.  *Id.*  He discussed

5  Ray's weight and noted that Ray was advised to lose weight.  AR 18, 220, 238,

6  280-83.  He also noted Ray's ability to ambulate without an assistive device, play

7  baseball, and participate in activities of daily living.  AR 16, 38-40, 222, 239-40.

8  The ALJ clearly and explicitly considered Ray's obesity in combination with his

9  other impairments in determining whether Ray equaled a listing.  AR 18.

10       Considering the record as a whole, Ray has not met his burden of

11  demonstrating that he meets or equals the criteria of Listing 1.02A.  The ALJ did

12  not err in finding that Ray's impairments do not meet or equal one of the listed

13  impairments.

14  **IV.**

15  **<u>ORDER</u>**

16       IT IS HEREBY ORDERED that the decision of the Commissioner is

17  affirmed.

18       IT IS FURTHER ORDERED that the Clerk serve copies of this Order and

19  the Judgment herein on all parties or their counsel.

20

21

22  DATED: May 23, 2014

23            ALICIA G. ROSENBERG
          United States Magistrate Judge

24

25

26

27

28

9